UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZAMAMBU KINDU,

      Petitioner,

      v.                              CAUSE NO. 3:26cv669 DRL-SJF

BRIAN ENGLISH,

      Respondent.

<u>OPINION AND ORDER</u>

Immigration detainee Zamambu Kindu filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Kidane filed a reply. The petition is ripe for review.

Mr. Kindu is a citizen of the Democratic Republic of Congo who entered the United States as a refugee in 2023. In August 2023, he was criminally convicted; and, on March 4, 2024, an immigration judge ordered him removed to the Democratic Republic of Congo *in absentia*. On November 24, 2025, United States Immigration and Customs Enforcement (ICE) detained him. He is currently detained at the Miami Correctional Facility.

On May 28, 2026, an ICE official attested that, on December 11, 2025, the government submitted a request for travel documents to the Democratic Republic of Congo, which remains pending. He further attested that the government will expeditiously coordinate Mr. Kindu's removal once travel documents are received. In reply, Mr. Kindu advises that, on

May 15, 2026, the World Health Organization declared a public health emergency due to the outbreak of the Ebola virus in the Democratic Republic of Congo.

The Warden first argues that the court lacks subject matter jurisdiction over Mr. Kindu's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Kindu ended no later than February 2026. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained longer — what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] The Warden relies on Section 1231(a)(6)as the basis for Mr. Kindu's current detention.

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533

3

U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments" — such as the status of repatriation negotiations — are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely

4

because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Kindu has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the respondent identifies the Democratic Republic of Congo as the only country under consideration for removal. On December 11, 2025, the government submitted a formal request for travel documents to the Democratic Republic of Congo. Mr. Kindu replies that this request has now been pending for six months and that a public health emergency has arisen in the Democratic Republic of Congo due to an outbreak of the Ebola virus. Significantly, on their official government websites, the United States Centers for Disease and Control and Prevention and the United States Department of State strongly advise against traveling to the Democratic Republic of

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

Congo due to the outbreak. The court finds that Mr. Kindu has met his preliminary burden of showing good reason to believe that he will not be removed within the reasonably foreseeable future.

The Warden offers nothing to rebut the concerns presented by the outbreak of the Ebola virus and its impact on the government's efforts to remove Mr. Kindu to the Democratic Republic of Congo. However, the court acknowledges that Mr. Kindu raised it for the first time in his reply brief and that the Ebola outbreak itself arose during the pendency of this case. Consequently, the court will seek the Warden's response on this issue before resolving the habeas petition. Specifically, the Warden should address Mr. Kindu's argument that his removal will not occur within the reasonably foreseeable future due to the Ebola outbreak in the Democratic Republic of Congo.

For these reasons, the court:

(1) ORDERS the Warden to file a response consistent with this order by **June 19, 2026**; and

(2) ORDERS Zamambu Kindu to file any reply by **July 8, 2026**.

SO ORDERED.

June 12, 2026                           *s/ Damon R. Leichty*
                                        Judge, United States District Court