UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZAMAMBU KINDU,

       Petitioner,

       v.                                                        CAUSE NO. 3:26cv669 DRL-SJF

BRIAN ENGLISH,

       Respondent.

<u>OPINION AND ORDER</u>

Immigration detainee Zamambu Kindu filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States.

In a prior order, the court considered his sole claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001). It found that Mr. Kindu has satisfied his initial burden of showing that his removal would not occur in the reasonably foreseeable future because his travel documents application had been pending with the Democratic Republic of Congo for six months without a response and because the federal government had formally advised against travelling to the Democratic Republic of Congo due to an outbreak of the Ebola virus. The court observed that the Warden had had only a limited opportunity to respond to Mr. Kindu's concerns about the Ebola virus because they were raised for the first time in reply and because the outbreak was a recent development. As a result, the court ordered supplemental briefing on whether the Ebola outbreak affected the reasonable foreseeability

of Mr. Kindu's removal to the Democratic Republic of Congo. The parties have since filed the supplemental round of briefing, so the court will now resolve the habeas petition.

Mr. Kindu is a citizen of the Democratic Republic of Congo who entered the United States as a refugee in 2023. In August 2023, he was criminally convicted; and, on March 4, 2024, an immigration judge ordered him removed to the Democratic Republic of Congo *in absentia*. On November 24, 2025, United States Immigration and Customs Enforcement (ICE) detained him. He is currently detained at the Miami Correctional Facility.

On May 28, 2026, an ICE official attested that, on December 11, 2025, the government submitted a request for travel documents to the Democratic Republic of Congo, which remains pending. He further attested that the government will expeditiously coordinate Mr. Kindu's removal once travel documents are received. In reply, Mr. Kindu advised that, on May 15, 2026, the World Health Organization declared a public health emergency due to the outbreak of the Ebola virus in the Democratic Republic of Congo. On June 18, 2026, an ICE official attested that, "[he] was informed by [Enforcement and Removal Operations] Headquarters Removal Management Division that removals to the Democratic Republic of Congo may proceed by commercial flight until further notice." The ICE official further attested that the government continues to await a response from the Democratic Republic of Congo on the request for travel documents.

The Warden first argues that the court lacks subject matter jurisdiction over Mr. Kindu's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons

given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Kindu ended no later than February 2026. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] The Warden relies on Section 1231(a)(6) as the basis for Mr. Kindu's current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large,"

but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86. And as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Zadvydas*, 533 U.S. at 701.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

Because Mr. Kindu has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the respondent identifies the Democratic Republic of Congo as the only country under consideration for removal. On December 11, 2025, the government submitted a formal request for travel documents to the Democratic Republic of Congo. Mr. Kindu replies that this request has now been pending

for seven months without any response and that a public health emergency has arisen in the Democratic Republic of Congo due to an outbreak of the Ebola virus. On this basis, the court finds that Mr. Kindu has met his preliminary burden of showing good reason to believe that he will not be removed within the reasonably foreseeable future.

To rebut this showing, the respondent offers an attestation that the government continues to await a response from the Democratic Republic of Congo on the application for travel documents submitted on December 11, 2026; and an attestation that the government is allowing removals to the Democratic Republic of Congo to proceed. The court credits the attestation that the government is allowing removals to the Democratic Republic of Congo to proceed. Though Mr. Kindu cites news articles to the contrary, the court observes that these articles were written more than a month ago and that they do not specifically identify any federal official or any governmental document confirming that removals to the Democratic Republic of Congo were paused, or are paused now. To Mr. Kindu's point, the Warden's showing could have been more robust, but the court sees no reason to suspect that the attesting ICE official, a deportation officer, isn't qualified or knowledgeable to offer testimony on the status of the government's removals to the Democratic Republic of Congo.

Still, the court cannot find that the respondent has adequately rebutted Mr. Kindu's showing on the ultimate issue of whether his removal to the Democratic Republic of Congo will occur in the reasonably foreseeable future. The request for travel documents has now been pending for more than seven months. The Warden's showing does not adequately explain why travel documents have not yet been obtained seven months after the request was submitted, or the likely time range in which travel papers might normally be secured.

6

It also does not provide any insight into the likelihood that the Democratic Republic of Congo will issue travel documents or that this process remains within the usual wheelhouse of time or has stalled. The most that could be said on this record is that the government remains in an indeterminate holding pattern with no visible offramp. In short, the government has not shown a likelihood of Mr. Kindu's removal in the reasonably foreseeable future. Therefore, the respondent must release Mr. Kindu under *Zadvydas*. Efforts to remove him may continue while he is released.

For these reasons, the court:

(1) GRANTS the petition for writ of habeas corpus [2] and ORDERS the respondent to release Zamambu Kindu on appropriate conditions of supervised release and to certify compliance with this order by filing a notice with the court by **July 9, 2026**; and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED.

July 7, 2026                                          *s/ Damon R. Leichty*
                                                     Judge, United States District Court